321 P.2d 1023

Harry J. ELLEN, dba Central Drug Company, and Horace Kimball, dba Kimball Wholesale Drug Company, Appellants,

v.

MARICOPA COUNTY, a body politic, Appellee.

No. 6222.

Supreme Court of Arizona.

Feb. 19, 1958.

Abbott H. Goldenkoff, and Moore & Moore, Phoenix, for appellants.

Charles C. Stidham, County Atty., and Lawrence C. Cantor, Deputy County Atty., Phoenix, for appellee.

STRUCKMEYER, Justice.

This is an action brought by Maricopa County, Arizona, to recover the sum of $4684.28 allegedly owed for breach of warranty. In March, 1951, appellee, desiring medical supplies for its county hospital, issued a call for bids for various items of drugs. The call for bids specified that only the products of fourteen named drug companies were acceptable. The appellants, as joint venturers under the name of Central Drug Company, submitted a bid

which among other things stated that a certain malt vitamin mix was the product of Reed & Carnrick, one of the acceptable fourteen companies. Also attached to the bid was this statement.

"Central Drug Co.

"As stated in your bid, all drugs will be delivered from those companys specified and no others. Also delivery dates as stated. Typewritten confirmation following by mail.

"(Signed) H. J. Ellen"

The appellants' bid was accepted and the mix was paid for and delivered, but some time later it was decided by the medical director of the county hospital that it did not conform to the specifications called for in the bid, and a letter was sent to appellants rescinding the transaction. The purchase price of the malt vitamin mix was $5,700. However, suit was brought for only $4,684.28 because the county was then indebted to appellants in the sum of $1,015.-72, being the amount admittedly due on the purchase of other drugs. Appellants answered, denying the alleged breach, and counterclaimed for $1,015.72. The trial court entered judgment in favor of the county.

Appellants have assigned as error the failure of the court below to direct a verdict in their favor both at the close of the county's case and at the close of the entire case. It is urged that the appellee failed to prove that the malt vitamin mixture was not the product of Reed & Carnrick or one of the other thirteen companies acceptable to the county. The complaint and the evidence introduced at the trial establishes that the county relied upon § 44–269, A.R.S. 1956, then § 52–578 A.C.A.1939, which provides that where there is a breach of warranty by the seller, the buyer, if the goods have already been received, may return them or offer to return them to the seller and recover the price which has been paid. It should be emphasized that the breach of warranty relied upon by the county is the failure to deliver drugs, the product of either Reed & Carnrick or another acceptable drug company. No other breach of warranty is suggested. Indeed, it affirmatively appears that in quality the malt vitamin mix was in every respect as specified by the county.

In answer to appellants' contentions, the county simply states in its brief that "There is testimony throughout the evidence that it was not the product of Reed & Carnrick." Without citation or reference to any portion of the record. By Rule 5(d) of the Rules of Supreme Court, Civil Appeals, 17 A.R.S., it is specifically provided that the appellee, when its statement of the case differs in any material particular from that of the appellant, shall make a reference to the portion of the record or reporter's tran-

script upon which it relies to prove the correctness of his statement. No attempt whatsoever has been made to comply with this rule. Nevertheless, we have examined the many exhibits and the lengthy transcript of testimony in detail with a view to determining the answer to these issues. We have been unable to find any relevant testimony which suggests to us that the malt vitamin mix was not the product of Reed & Carnrick or one of the other acceptable drug companies. The only witness for the county whose testimony even remotely touches on this is the then medical director of the county hospital. He testified that prior to the acceptance of the Central Drug Company bid he recommended to the board of supervisors that Harry J. Ellen be required to furnish a typewritten signed copy of the drugs, stating the name of the manufacturer because he was unable to identify some of the drugs as being those of Reed & Carnrick. From manufacturers' lists which he had in his possession at that time but not at the trial, it did not appear that Reed & Carnrick made such a vitamin malt mix. He later withdrew this recommendation on being advised that at certain times such products could be obtained prepared on special order. The most enlightening portions of the medical director's testimony follow:

"Q. With what products of Reed & Carnrick were you familiar at the time you made up this call for bids? A. That is four years ago and I honestly don't know.

"* * * * * *

"Q. You recall, doctor, that the largest single item on which you asked for bids was on some malt and vitamin, was it not? A. Yes.

"Q. What drug houses made that? A. I don't remember, * * *.

"Q. Can you tell me whether any company advertised or had offered to furnish any malt extract that complied with the specifications you called for in your call for bids? A. Well, I would say from my calling for it that must have been the case.

"* * * * * *

"Q. Is there any other company besides Burroughs & Wellcome and Parke Davis contained in that list of fourteen that you think could have supplied that malt extract? A. I don't know.

"Q. Did you know in 1951? A. I think I did, I must have. There is another thing, Mr. Moore, that you must remember, when larger amounts of a product are bid, that the product —I understood that some of these companies would make up special preparations for a person, that they would

manufacture it for a person, a special type of thing.

" *     *     *     *     *     *

"Q. Dr. * * * was this vitamalt which was delivered to the county hospital by Central Drug Company manufactured by Reed & Carnrick?

A. Mr. Moore: We will object * *. "The Court: Objection sustained * * *. Do you know who it was manufactured by, doctor? A. No." The defendant Horace Kimball testified:

"Q. Where did the drugs you supplied to the county hospital come from? A. I ordered them from Crest Laboratories.

"Q. Where is Crest Laboratories? A. In Los Angeles.

" *     *     *     *     *     *

"Q. Now, it is a fact, is it not, Mr. Kimball, that this vitamalt mix was not manufactured by Reed & Carnrick? A. I do not know who it was manufactured by. As you know there is manufacturing swapping between all large companies, and who made it— I wasn't there—all I know is what Crest told me. I relied on their word.

"Q. You made no effort to find out who manufactured it? A. No, every drug sale—I am a wholesaler, I don't have testing facilities. When I buy from a person if he tells me it came from a certain place we normally don't ever ask. I mean the control of the government is such that that is superfluous, you would be insulting a person by insinuating anything of that sort.

"Q. Could Reed & Carnrick have manufactured these goods? A. Probably could have for all I know."

It is apparent from the testimony of the medical director and the appellant Horace Kimball that the county has wholly failed to prove an essential element of its case, namely, that the product delivered and accepted by it was not a product of Reed & Carnrick and not the product of one of the other thirteen drug companies specified in the call for bids.

We certainly do not approve or condone the business practices of the appellants which in certain other respects not directly material to the issues are reprehensible. However, here, as in all cases where there is a charge of breach of contract, the breach relied on must be proved. Judgment is reversed with directions to enter judgment in favor of the appellants for the sum of $1,015.72 and their costs.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.